In the Matter of DAVINA M., Alleged to be a Permanently Neglected Child. NEW YORK FOUNDLING HOSPITAL, Appellant; GLORIA M., Respondent.

First Department, June 26, 1979

### APPEARANCES OF COUNSEL

*David H. Berman* of counsel *(Frederick J. Magovern* with him on the brief; *Gerald E. Bodell,* attorney), for appellant.

*Joseph Zalk* of counsel *(Zalk, Rubel & Perret,* attorneys), for respondent.

### OPINION OF THE COURT

SILVERMAN, J.

This is a proceeding under article 6 of the Family Court Act brought by the New York Foundling Hospital for the commit-

ment of the guardianship and custody of the child Davina M. on the ground of permanent neglect. After a hearing, the Family Court Judge filed a brief order to the effect that the allegations of the petition were not supported by a fair preponderance of the evidence and dismissed the petition.

There is no claim that the agency has failed to make diligent efforts to encourage and strengthen the parental relationship before the filing of the petition.

The child Davina M. was born out of wedlock on October 20, 1973. The child was admitted to the care of petitioner agency, the New York Foundling Hospital, on June 5, 1974, at which time she was seven and one-half months old. The child remained there for seven months until January 10, 1975 when she was discharged on a trial basis to her mother and grandmother. One and a half months later on February 27, 1975, the child was returned by the grandmother to the agency, the grandmother saying that the mother was not properly taking care of the child and was leaving the child with the grandmother who was unable to take proper care of the child. The child then remained in the care of the agency for another 18 months until August 25, 1976, when the mother removed the child without approval from the agency. A month and a half later on October 13, 1976, the child was returned to the agency by the Bureau of Child Welfare, the mother having passed out in the street from an overdose of drugs. On April 13, 1977 the child was placed in a foster home where she was at the time of the hearing and where she presumably still is. The petition dated December 1, 1977 alleges that the foster parents wish to adopt the child.

Thus the child was placed with the agency almost five years ago and in all that time she has been with her mother twice for a total of only three months; each time the child had to be returned to the agency, once voluntarily by the grandmother and once because of the mother's passing out in the street. The child is now five and one-half years old.

It is plain that the mother was addicted to barbiturates and methadone during the period since the child first entered into the care of the agency. During that period, the mother was hospitalized on at least five occasions for drug overdoses and she has entered and left a number of drug programs. On most occasions when she visited the child or saw the social worker at the agency, she was obviously under the influence of drugs. She has missed many visits.

The only plans she has made for the child were quite unrealistic, as she herself recognized: that she would get a job, which she has not; that she would get married, which she herself characterized as "silly"; that she would have the child with the grandmother, which she herself knew would not work. Her only "plan" was that she would have the child live with her.

Section 384-b (subd 7, par [a]) of the Social Services Law provides in part: "For the purposes of this section, 'permanently neglected child' shall mean a child who is in the care of an authorized agency and whose parent or custodian has failed for a period of more than one year following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship".

In *Matter of Orlando F.* (40 NY2d 103, 110, 111), the Court of Appeals said: "[I]t has become recognized that a finding of a failure to plan, in and of itself, suffices to support a determination of permanent neglect (see *Matter of Barbara P.,* 71 Misc 2d 965). * * * State Senator Joseph R. Pisani, Chairman of the Temporary State Commission on Child Welfare, in support of the afore-mentioned 1973 amendment, wrote: '[E]ven when there is substantial and continuous visitation, the parent or custodian may fail to take steps to end the foster care status of the child and restore the child to a homelife with the parent or custodian. A child is no less in limbo when kept in foster care year after year when the parent or custodian is physically and financially able to provide a home but fails to do so.' "

Section 384-b (subd 7, par [c]) of the Social Services Law provides in part: "As used in paragraph (a) of this subdivision, 'to plan for the future of the child' shall mean to take such steps as may be necessary to provide an adequate, stable home and parental care for the child within a period of time which is reasonable under the financial circumstances available to the parent. The plan must be realistic and feasible, and good faith effort shall not, of itself, be determinative." In the present case the mother's plans cannot be called realistic and feasible.

In the meantime, the child continues in that "limbo"

against which the statutes are aimed. As the Court of Appeals said in *Matter of Sanjivini K.* (40 NY2d 1025, 1026-1027): "We are prompted, however, in the circumstances disclosed in the record now before us to urge that all proceedings concerning the child be conducted to their final conclusions with dispatch, in the best interests of the child * * * The subject of all these proceedings is a young child, and ingenuity and energy should be brought to bear, within the limits of due process of law and the applicable statutes, promptly to make appropriate provision for her welfare."

Consistent with that duty and with what appear to us to be the clear requirements of this situation and record, we reverse the findings by the Family Court and make the appropriate finding that Davina M. is a permanently neglected child. What the consequences of that will be must of course remain for the dispositional hearing.

The order of the Family Court, New York County (S. FRIED-MAN, J.), dated April 24, 1978, dismissing the petition in a proceeding under article 6 of the Family Court Act should be reversed, on the law and the facts, without costs; and the court finds that the child Davina M., the subject of these proceedings, is a permanently neglected child within the meaning of section 614 (subd 1, pars [a], [b], [c], [d]) of the Family Court Act and section 384-b (subd 7, par [a]) of the Social Services Law, in that the child's mother has failed for a period of more than one year following the date such child came into the care of petitioner agency substantially and continuously to plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship; findings of fact inconsistent herewith should be reversed; and the matter should be remanded to the Family Court for a dispositional hearing.

KUPFERMAN, J. P., BIRNS, SULLIVAN and LUPIANO, JJ., concur.

Order, Family Court, New York County, entered on or about April 24, 1978, reversed, on the law and the facts, without costs and without disbursements; and the court finds that the child Davina M., the subject of these proceedings, is a permanently neglected child within the meaning of section 614 (subd 1, pars [a], [b], [c], [d]) of the Family Court Act and section 384-b (subd 7, par [a]) of the Social Services Law, in that the

child's mother has failed for a period of more than one year following the date such child came into the care of petitioner agency substantially and continuously to plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship; findings of fact inconsistent herewith are reversed; and the matter is remanded to the Family Court for a dispositional hearing.